## In re J. T. ROBERTSON CO., Inc.

District Court, N. D. New York.
April 6, 1938.

Costello, Cooney & Fearon, of Syracuse, N. Y., for petitioners.

Hiscock, Cowie, Bruce & Lee, of Syracuse, N. Y., for First Trust & Deposit Co. and Domark Corporation.

COOPER, District Judge.

This is a review of two decisions of the Referee in Bankruptcy for Onondaga County relating to mortgages given by the bankrupt.

One decision held that a chattel mortgage given originally for the sum of $50,000 was a valid and outstanding lien for that amount and denied the application to sell free from the lien of the mortgage the property and equipment covered thereby.

The other decision confirmed the sale of the real property of the bankrupt subject to certain mortgages thereon.

The bankrupt, a Delaware corporation, having its principal place of business in the City of Syracuse, N. Y., filed a voluntary petition for reorganization under Section 77B of the Bankruptcy Act, 11 U. S.C.A. § 207, on September 23rd, 1935. The debtor corporation was continued in possession and operated the business under the reorganization proceedings until, on March 9th, 1936, it filed a petition verified by its manager Rettinger, alleging that it was insolvent and asking that it be adjudicated a bankrupt. The debtor corporation was thereupon adjudicated a bankrupt.

Upon application of the attorneys for the First Trust and Deposit Company the Court made an order that the assets be liquidated. Upon like application by the Attorneys for the First Trust and Deposit Company on April 9th, 1936, Ernest H. Stauber was appointed trustee by an order.

It is helpful if not necessary that the chronological order of events be made clear.

August 11th, 1925. (Exhibit 36) Mortgage for $100,000 given by J. T. Robertson Company (Conn.) to the City Bank Trust Company of Syracuse, N. Y., the predecessor of the First Trust and Deposit Company, due one day after date.

January 2nd, 1928 (Exhibit 37). Mortgage for $50,000 by J. T. Robertson Company (Conn.) to City Bank Trust Company, due in 30 days.

July 2nd, 1928 (Exhibit 44, Also Ex. 2) (These exhibits bear both these numbers). An agreement in writing was made between J. T. Robertson Company (The Conn. Corporation) party of the first part and William H. Robertson and Herbert H. Robertson of the second part and the City Bank Trust Company of the third part, extending the time of payment of the two mortgages totaling $150,000 to July 2nd, 1933, and including also a guaranty by the two Robertsons to pay these two mortgages for $150,000 principal and interest.

Apparently at some time between July 2nd and July 17th, 1928, the J. T. Robertson Company of Delaware was incorporated, having its principal place of business in Syracuse, N. Y.

July 17th, 1928 and July 20th, 1928 (Exhibits 34 and 35) the J. T. Robertson Company of Connecticut conveyed by two deeds to the J. T. Robertson Company of Delaware the mortgaged real property in Onondaga County, N. Y. There was no assumption of the mortgages in either of these deeds and no recital of the mortgages.

October 5th, 1928 (Exhibit 2 and Exhibit 4). Agreement between W. H. Robertson and Herbert F. Robertson with the City Bank and Trust Company to guarantee up to the sum of $75,000 a line of credit to be extended by the Bank to the J. T. Robertson Company Inc. This appears to be the Robertson Company of Delaware and not the Robertson Company of Connecticut.

December 5th, 1929. The City Bank Trust Company merged with the First Trust and Deposit Company.

December 21st, 1929 (Exhibit 41—Exhibit 8) Agreement between Herbert F. Robertson and the First Trust and Deposit Company by which Robertson agrees that 2,174 shares of the stock of the Bon Ami Company theretofore pledged by him to secure the payment of two promissory notes in the sum of $14,000 each given by him to the Bank, shall be held by the bank as security for the two $14,000 notes on which $21,000 was then due and also as continuing collateral security for the payment of the $150,000 real property mortgages and for "any and all liability or responsibility of the said assignor H. F. Robertson and or the said J. T. Robertson Company to the City Bank Trust Company, the said assignee or the first Trust and Deposit Company by reason of said agreement of guarantee and for any and

all sums of money now due or to become due therein and for any and all other indebtedness of every name, kind and nature now existing and which may hereafter arise from the said H. F. Robertson and J. T. Robertson Company or either of them to the assignee."

February 9th, 1934 (Exhibits 43—9). Agreement by Wm. W. Robertson and Herbert F. Robertson that the First Trust and Deposit Company and in consideration of further extension of the time for payment of the two real estate mortgages totaling $150,000, that their guarantee of the payment of principal and interest of the said mortgages, made and in the agreement of July 2nd, 1928, shall remain in full force and effect and that they shall be severally bound for the payment of these mortgages.

March 20th, 1934 (Exhibits 20 & 1). This is a chattel mortgage given by the J. T. Robertson Company Inc. to the First Trust and Deposit Company reciting that the Robertson Company is indebted to the bank in the sum not to exceed $50,000 at any one time: "being for, and as collateral security to said party of the second part for the payment of five certain notes aggregating $38,000, copies of which notes are specifically described in Schedule 'A' hereto annexed, which notes were made by said party of the first part to the party of the second part and that to carry out the first party's agreement to give said second party this mortgage in consideration of said loan of $10,000 on March 6, 1934, and as a collateral and continuing security for any renewal or renewals thereof and interest thereon and as a further continuing security, and for the payment of any note, check, draft or other obligation, now or hereafter held, owned, due to or endorsed by said party of the second part for or on account of said party of the first part or any renewal or renewals thereof or either of them, and to save the said party of the second part harmless from all loss, cost or damage that it may sustain as aforesaid, or as endorser, holder or owner of any note, check, draft or other obligation of the said party of the first part, or upon which the said party is or may become in any way liable, or any renewal or renewals thereof, or either of them, not to exceed $50,000 at any one time."

The list of the $38,000 direct paper secured by this chattel mortgage is given in Exhibit 20 (Chattel mortgage) and in Exhibit 38 as follows:

| No. | Date of Note. | Maturity Date. | Amount. |
|---|---|---|---|
| A. | 12/22/33 | 3/22/34 | $ 3,000.00 |
| B. | 2/19/34 | 3/19/34 | 10,000.00 |
| C. | 12/20/33 | 3/20/34 | 1,000.00 |
| D. | 2/18/34 | 3/19/34 | 14,000.00 |
| E. | 3/6/34 | Demand, | 10,000.00 |
| | | | $38,000.00 |

Renewals of these notes were as follows:

March 20, 1934 (Ex. 38) Note B. for $10,000 was renewed for one month maturing April 19, 1934.

March 20th, 1934 Note C. for $1,000 was renewed and increased by $16,500.00 to $17,500.00, and called note F.

| | | |
|---|---|---|
| March 21, 1934, paid on Note E., | | $ 5,731.47 |
| March 23, 1934, " " " E., | | 500.00 |
| March 27, 1934, " " " E., | | 761.90 |
| March 28, 1934, " " " E., | | 741.29 |
| March 30, 1934, " " " E., | | 2,625.34 |
| Note E. Paid in Full, | | $10,000.00 |

April 4, 1934, New Note G. for new loan maturing May 4, 1934, $1500.00.

April 19, 1934, Combined Notes into a new $41,500 note.

```
B.  10,000
D.  14,000
F.  17,500

   $41,500
```

June 29, 1934 New Note for $4,000.00 given maturing July 7, 1934, and called new note H.

January 10th, 1935, Combined Notes.

```
A.  $3,000.00
G.   1,500.00
H.   4,000.00

   $8,500.00 maturing June 13, 1935.
```

$41,500.00 plus $8,500.00 makes $50,000.

February 25, 1935, renewal of the $50,000 chattel mortgage was filed and $50,000 was claimed to be due.

February 20th, 1936. Another renewal of the chattel mortgage was filed and $50,000 was claimed to be due.

The objecting creditors assert that Note B. for $10,000 was paid in full by the five payments of March 20th—30th, 1934 above set forth and not Note E. as shown on Exhibit 38.

By Exhibit 42—Exhibit 9, it appears that various accounts receivable were assigned to the bank to secure Note B.

On Exhibit 42 appears the words "Time Loan" "General Collateral" and then these words: "To secure note dated 3/20/34 for $10,000 due April 19, 1934 and any and all renewals thereof."

On this same exhibit 42 appears credits or payments of exactly the same dates and amounts as shown on Exhibit 38 and above set forth as payments on the demand Note E.

There can be little doubt that the objecting creditors are correct and that it was note B. and not note E. which was paid in full.

By reason thereof the objecting creditors assert that there was only $40,000 due on the chattel mortgage and the renewals filed were void under authority of Ely v. Carnley, 19 N.Y. 496, and In re Packard Press, Inc., 2 Cir., 3 F.2d 232.

If it were true that only $40,000 were due on the chattel mortgages the finding would be for the creditors and the renewal held void.

But the chattel mortgage was security not only for the $38,000 enumerated notes, but was also continuing security "for the payment of any note, check, draft or other obligaton now or hereafter held, owned, due to or endorsed" by the bank.

If Note B. was paid, as it undoubtedly was, Demand note E. of like amount was unpaid, for both were not paid.

The amount of the indebtedness evidenced by notes still remained at $50,000. This appears summarized on exhibit 58 as follows, if for Note E., we read Note B:

Summary

| | |
|---|---|
| Total direct paper as of 3/18/34, | $38,000.00 |
| Increase of Note F (as above shown) as of 3/20/34, | 16,500.00 |
| New Note G (as above shown) as of 4/4/34, | 1,500.00 |
| New Note H (as above shown) as of 6/29/34, | 4,000.00 |
| Total, | $60,000.00 |
| Less Payments in Full of Note E. (Should be Note B) as of 3/30/34 (as above shown), | 10,000.00 |
| | $50,000.00 |
| Consisting of Note dated 5/29/35 (above shown) | 41,500.00 |
| Consisting of Note dated 6/13/35, | 8,500.00 |
| | $50,000.00 |

There is no claim that these notes, nor any part, have ever been paid, so that on each renewal date there was $50,000 due on the notes.

Moreover, the chattel mortgage was security for all other "notes, checks, drafts or other obligations" of the company to the bank.

The bank claims there were other obligations from the Company to the bank.

On Exhibit No. 39, also No. 6, there purports to appear the amount due on a line of credit not exceeding $75,000 guaranteed by the two Robertsons under the agreement of October 5th, 1928 (Exhibit 32 and Exhibit 4).

Exhibit 39 covers the period from Sept. 11, 1935 to Nov. 12, 1935 and shows loan balances as follows:

| Direct. | Indirect. | Collateral. | Total Liability. |
|---|---|---|---|
| 9/11/35 $54,000 | $4,437.42 | $14,853.59 | $72,873.06 |
| 10/12/35 $50,000 | 0 | 925.94 | 50,925.94 |

Whether this is the same debt secured by the mortgage or additional debt is not clear, but from the proof of claim filed by the bank verified Nov. 30, 1935 (No Exhibit Number) it would appear to be the same debt for the proof of debt recites that the amount due is $50,000, that the debt is represented by two notes of $41,500.00 and $8,500.00, respectively, secured by the chattel mortgage in question filed March 28, 1934 and renewed February 25, 1935.

The date March 28, 1934 is evidently error for the certified copy (Exhibit 28—Exhibit 1) is marked as filed March 20, 1938. Had there been additional indebtedness beyond $50,000 it would have been included in this or some other proof of claim.

The Babcock audit (Ex. 9—Ex. 6) shows that as of June 30, 1934, the Robertson Company owed notes of $57,700.00 presumably held by the bank, for the Rettinger loan later referred to was not to be granted until on or before July 10, 1934.

The Babcock Audit (Exhibit 5—Exhibit 2) shows notes due the Bank of $60,505.67, notes due Rettinger $10,000, Robertson Company of Canada $19,000 and notes due Manchester Bank, $2,500.00.

The balance sheet (Ex. 10—Ex. 7) of Sept. 23, 1935, the day the Robertson Company filed its petition in reorganization proceedings shows current liabilities:

| | |
|---|---|
| Notes Payable (Banks), | $50,000.00 |
| Notes Payable (Others), | 23,248.75 |
| Accounts payable to others, | 99,109.05 |

It reasonably appears that there was at all times $50,000 due from the Robertson Company to the bank and the renewal statements did not erroneously state the amount secured thereby.

The creditors also claim the chattel mortgage is void because the renewal statement of 1936 was not filed as required by statute which will be discussed later herein.

Returning to the Chronology it appears that on April 30, 1934 (Ex. 11) management contract for two years between J. T. Robertson Company Inc. (Delaware) and A. D. Rettinger of New Richmond, Ohio, terminable on 90 days notice, by which Rettinger agrees to loan to Robertson Company on or before July 10, 1934, $10,000 suitably secured.

Sept. 23, 1935. Petition for reorganization under 77–B was filed by the Robertson Company. The creditors claim that this petition was based on proceedings brought for the foreclosure of chattel and real property mortgages above referred to. But the summons in the real property foreclosure is dated October 10, 1935.

The debtor was continued in possession under Rettinger as manager. Creditors claim he was merely agent of the bank and operated for the benefit of the bank. This is later referred to herein.

Nov. 6, 1935 (Exhibit 45—Exhibit 3). Herbert D. Robertson and William W. Robertson agreement with First Trust and Deposit Company by which Robertson transferred to the bank 2,000 of the 2,174 shares of Bon Ami stock which on December 21, 1929 the Robertsons had assigned to the bank as collateral for their own loans, for the $75,000 line of credit (October 5, 1928) and as security for their guaranty of the $150,000 mortgage debt (July 2, 1928) and the bank surrendered to the Robertsons the remaining 174 shares and released the Robertsons from all obligations to the bank on their account and as guarantors, endorsers or otherwise upon the Company's notes, mortgages and other obligations.

Robertsons were also to secure and deliver to the bank for $1,900.00, the $19,000 note of the Robertson Company (bankrupt) due to Robertson Company of Canada.

Robertsons also agreed to transfer to the bank all the stock of the Robertson Company (Delaware—the then debtor in reorganization proceedings) held by them and by various other persons, members of their families or others, undoubtedly constituting a controlling interest if not the entire capital stock of the debtor.

The bank also agreed to pay the two Robertsons 50% of any amount above the indebtedness of all kinds due from Robertsons and from the debtor, but not including anything from the Robertson Company stock.

December 7th and 12th (1935) (Ex. 26—Ex. 27) the bank credited on the mortgage debt $49,229.51 leaving the balance on the two mortgages $100,780.49.

This $49,229.51 was undoubtedly the part of the proceeds of the sale of the 2,-000 shares of Bon Ami stock in excess of the Robertson personal indebtedness.

March 9, 1936. The debtor on a petition verified by Rettinger as Bankrupt asked that the debtor be declared insolvent and an order was made that the assets be liquidated.

April 9, 1936, one Ernest H. Stauber was appointed and he was directed to sell the assets subject to the mortgages held by the bank. The first sale was not confirmed. Another sale of the real estate was held and the same which was appraised in July 1936 at $91,485.00 was sold subject to the mortgage for $100.00.

The creditors claim that Rettinger as manager, both before and after the reorganization proceedings was allied with the bank and that the receivables were assigned to the bank upon its obligations while other creditors from whose raw materials such receivables arose were left unpaid.

There are some indications that there is some foundation for this charge, for after the proceedings were instituted and the debtor had been continued in possession, between October 22nd, 1935 and Nov. 8, 1936, about 13 assignments of collateral (Exhibit 39—Exhibit 6) were made to the bank and applied on the bank's debt.

Unless done by order of the Court or for new loans by order of the Court, and apparently there were none, it is difficult to see how this could properly be done.

Such things may properly be the subject of a suit by the trustee against the bank on the ground of obtaining a preference while in control of the debtor corporation before or after reorganization proceedings or both. The trustee will, of course, institute any suits which he is directed by the Court to bring and the Court

will designate counsel, ordinarily counsel selected by the creditors, to prosecute any such suit or suits.

Such matters can hardly be said to be properly before the Court at this time since no such issue has been tendered in a formal way where the charge may be definitely stated in a pleading giving notice of the acts charged.

The same, or other appropriate proceedings may be instituted, requiring the debtor corporation to account for its operations, receipts and disbursements in the reorganization proceedings.

The $49,229.51 credited on the real property mortgage debt on Dec. 7th and 12th, 1935 might have been credited on the chattel mortgage and it would have been satisfied.

Does the law deny the bank the right to apply this sum which was apparently the proceeds of the sale of the Bon Ami stock after payment of the Robertson notes?

The Bon Ami stock was not the property of the debtor. The agreement of November 5, 1935 did not provide how it should be applied. The debtor was not a party to that agreement. It was then in the custody of the Court.

It would seem that in the absence of application by the Robertsons or controlling law the bank might apply it to any debt it chose of the debtor even though other application would have been more beneficial to the creditors. This too is not properly here at this time. The bank contends that a fair construction of the agreement of November 5th, 1935 required the proceeds of the sale of the stock to be first applied to the mortgage debt. That is not at all clear and need not be determined here.

There remains the question whether or not the renewal of the chattel mortgage on February 20th, 1936 was valid.

Section 235 of the Lien Law, Consol. Laws, c. 33, provides that a chattel mortgage shall be invalid: "after the expiration of the first or any succeeding term of one year, reckoning from the time of the first filing, unless, 1. Within thirty days next preceding the expiration of each such term," a renewal certificate is filed.

Section 20 of the General Construction Law, Consol.Laws, c. 22, provides: "a number of days specified as a period from a certain day within which or after or before which an act is * * * to be done

means such number of calendar days, exclusive of the calendar from which the reckoning is made. * * * The day from which any specified period of time is reckoned shall be excluded in making the reckoning."

The chattel mortgage was filed March 20th, 1934. It was renewed by filing a renewal on February 25th, 1935. The 1936 renewal was filed February 20th, 1936. The objecting creditors say that February 20, 1936 was not within 30 days next preceding March 20th, 1936. 1936 was leap year and February had 29 days. From February 20th, including both days, is a period of 30 days. Eliminating either day makes a period of 29 days.

Where the statute (Section 235 of the Lien Law) provides that a certain act must be done within 30 days before a certain day, and another statute governing the construction of the first statute (Section 20 of the General Construction Law) says that in such case the day from which the period of time is reckoned, it follows that March 20th must be excluded from the 30 day period. The 30th day before March 20th is February 19th. It follows, therefore, that February 20th is within the period of 30 days before March 20th.

There is nothing to the contrary or inconsistent herewith in the cases cited by creditors, viz.: In re East, 2 Cir., 17 F. 2d 585; In re Steffens, 2 Cir., 31 F.2d 660, 63 A.L.R. 589; People v. Burgess, 153 N.Y. 561, 47 N.E. 889.

The fact that foreclosure of the chattel mortgage was begun before the renewal period would not dispense with renewal in the absence of taking the mortgage chattels from the possession of the mortgagor before the expiration of the anniversary day.

Unlike foreclosure of real property there is no provision for filing and recording a lis pendens nor is there any other statutory means of giving notice to the public which is the object of the lien law provisions for renewal.

It must be held that the chattel mortgage is valid. There is no occasion, therefore, for selling the chattels free from the lien of the mortgage in the absence of any proof that there was a substantial equity for the general creditors which would be sacrificed by a sale subject to the mortgage.

The decision of the referee relating to the chattel mortgage is affirmed.

 The sale of the real estate subject to the mortgage should also be affirmed.

The amount of the mortgage debt exceeded the appraised value of the real property.

No question is raised as to the validity of the mortgages nor of the amount due thereon.

There is no equity for the creditors. The property has been twice sold. No objection is made as to the statutory regularity of the sale.

No good reason appears why the sale should not have been confirmed.

The decision of the referee is affirmed.